**Opinion issued July 26, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00749-CV

————————————

**MELISSA WENDT, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF DONALD WENDT, DECENDENT, Appellant**

**V.**

**MILAN K. SHETH, M.D. Appellee**

---

**On Appeal from the 270th District Court
Harris County, Texas
Trial Court Case No. 2014-05029**

---

### O P I N I O N

This is a medical malpractice case arising from the death of Donald Wendt due to complications during heart surgery. The original petition incorrectly named "Dr. Smith" as one of the anesthesiologists who treated Mr. Wendt. Discovery revealed the doctor's actual name—appellee Dr. Milan K. Sheth. He was named as

a defendant in a supplemental petition, but after the statutory limitations period expired. Dr. Sheth moved for summary judgment on the grounds that he was named and served as a defendant too late, and the trial court granted the motion.

In this appeal, Melissa Wendt, individually and on behalf of the estate of her late father, argues that the trial court erred. She contends that the supplemental petition filed after limitations expired related back to the date of the original petition under the doctrine of misnomer. She also suggests that limitations were tolled because Dr. Sheth's illegible handwriting in her father's medical records amounted to fraudulent concealment of his identity.

We conclude that because Dr. Sheth was not named as a defendant during the limitations period, the Wendts did not prove in the trial court that a misnomer occurred so as to permit the later-filed petition to be treated as having related back to the date of the original petition. Furthermore, because the fraudulent concealment argument was not raised in the trial court, it has been waived on appeal. Accordingly, we affirm.

# I

A cardiologist perforated Donald Wendt's artery while performing an angioplasty. As a result, the cardiologist called for an anesthesiologist, who improperly intubated Wendt, leading to a fatal loss of oxygen. Medical records misidentified the treating anesthesiologist as "Dr. Smith." The actual doctor

involved, Dr. Milan Sheth, prepared and signed handwritten notes about his consultation. The copy of these notes in the appellate record has an illegible signature with "Sheth" printed by hand beneath the signature. Mr. Wendt died on February 9, 2012.

In mid-December 2013, a notice of claim and medical authorization were sent to the hospital, the cardiologist, and "Dr. Smith."[1] All notices and authorizations were sent to the hospital's address. On February 4, 2014, Wendt's estate and daughters sued the hospital, the cardiologist, and two anesthesiologists, who were identified as "Zbigniew Wojciechowski, MD" and "Dr. Smith, MD." In October 2014, the cardiologist and Dr. Wojciechowski filed an interlocutory appeal from the trial court's denial of their motions to dismiss, which were based on the alleged inadequacy of the Chapter 74 expert reports.[2]

On December 2, 2014, the plaintiffs filed a supplemental petition that joined "Dr. Milan K. Sheth, MD" as a defendant. The supplemental petition included a "primary practice address" for Dr. Sheth of "Greater Houston Anesthesiology,

---

[1] *See* TEX. CIV. PRAC. & REM. CODE § 74.051(a) ("Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim.").

[2] *See Mangin v. Wendt*, 480 S.W.3d 701, 704 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

3

located at 2411 Fountain View, Suite 200, Houston, TX 77057," which was different from the address of the hospital where the initial notice of claim was sent.

Dr. Sheth filed a motion for summary judgment, asserting the affirmative defense of limitations.[3] In the course of identifying the latest date within the limitations period that the Wendts arguably could have joined him in the lawsuit, Dr. Sheth's motion stated:

> Assuming for purposes of this Motion that Plaintiffs' Chapter 74 notice of claim and authorization directed to Houston Methodist Sugar Land Hospital, Earl Mangin, M.D., and "Dr. Smith" constituted notice to Dr. Sheth pursuant to TEX. CIV. PRAC. & REM. CODE § 74.251(a), the statute of limitations expired on April 25, 2014.

In the context of Dr. Sheth's legal argument, the significance of this statement was to establish an outer limit for the limitations period—i.e., assuming that presuit notice was delivered to him, the limitations period could have been tolled an additional 75 days.[4] Even assuming the latest possible date for the expiration of

---

[3]     *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a) (two-year limitations period for personal-injury suits).

[4]     *See* TEX. CIV. PRAC. & REM. CODE § 74.051(c) ("Notice given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all parties and potential parties."). Though irrelevant to our legal analysis, the suggested April 25, 2014 expiration of the limitations period as stated in Dr. Sheth's motion appears to have been a miscalculation based on counting from the wrong date (the date of Mr. Wendt's death, rather than the date of the notice).

4

limitations, Dr. Sheth maintained that because he was first named as a defendant after limitations expired, he was entitled to judgment as a matter of law.

The plaintiffs did not dispute that Dr. Sheth was served in December 2014. In the trial court, they argued that they had "named the correct defendant" in the original petition but misspelled his name due to the illegibility of his handwriting in the medical records. They therefore maintained that the only question was whether they had acted diligently to accomplish service after they supplemented their petition to "correct the spelling" of Dr. Sheth's name. They asserted that they had acted diligently, and therefore the late service on Dr. Sheth "should relate back to the date of the original petition." The plaintiffs further argued that the fact of Mr. Wendt's death put Dr. Sheth "on notice of a potential claim for malpractice," and therefore he had "suffered no prejudice as a result of the delayed service."

The trial court granted summary judgment. Melissa Wendt appealed, acting on her own behalf and on behalf of her father's estate.

## II

Wendt contends that the supplemental petition naming Dr. Sheth relates back to the original petition which named "Dr. Smith," and thus it was timely filed under the doctrine of misnomer and procedural rules allowing an amended petition to relate back to the date of an original petition. She also contends that Dr. Sheth's illegible handwriting was proof of fraudulent concealment which equitably

5

estopped him from benefitting from the statute of limitations, but that issue was not raised in the trial court and therefore has been waived on appeal.[5] So we confine our analysis to misnomer.

We review de novo a trial court's ruling on a motion for summary judgment.[6] A movant for traditional summary judgment must establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.[7] A defendant moving for traditional summary judgment must negate conclusively at least one essential element of each of the plaintiff's causes of action or establish conclusively each element of an affirmative defense.[8]

Wendt contends that the filing of her supplemental petition naming Dr. Sheth as a defendant related back to the date of the filing of the original petition, before the expiration of the limitations period, and corrected a misnomer. Misnomer of parties is a common-law doctrine.[9] It applies when a party misnames itself or another party, but the correct parties are involved.[10]

---

[5]     TEX. R. CIV. P. 166a(c).

[6]     *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[7]     *See* TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003).

[8]     *Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014) (per curiam).

[9]     *See Chilkewitz v. Hyson*, 22 S.W.3d 825, 829–30 (Tex. 1999).

6

Dr. Sheth argues that Wendt has raised arguments on appeal that she did not raise in the trial court. In the motion for summary judgment, Dr. Sheth argued that limitations had passed because he was not added to the suit as a named defendant until December 2, 2014, when the plaintiffs filed their supplemental petition. Wendt's response in the trial court primarily focused on whether she had acted with diligence to serve process. Wendt contended that Dr. Sheth's name had been misspelled "Smith" but the correct, intended defendant was named in the original petition, thus her untimely service on Dr. Sheth should relate back to the timely filing of the original petition. By making those arguments, Wendt responded to a limitations defense in the trial court and framed the issue as one of timely suit and untimely service.

On appeal, Wendt no longer contends that the issue is one of diligence in attempting to effect service. Instead she argues that because of misnomer the supplemental petition should relate back to the date of original petition. While Dr. Sheth contends that this appellate issue does not comport with the argument made in the trial court, Wendt disagrees, noting that her summary-judgment response expressly stated that based on the "available facts," the plaintiffs "named the correct defendant in their original petition, which was timely filed."

---

[10]   *See In re Greater Hous. Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009) (per curiam).

There is no dispute that "Dr. Smith" was named in the original petition and Dr. Sheth was named in a supplemental petition that was both filed and served after limitations expired. Reading Wendt's summary-judgment response liberally to raise the misnomer issue argued on appeal, it nevertheless failed to overcome Dr. Sheth's limitations defense.

A plaintiff seeking to avoid summary judgment on limitations has the burden to produce evidence that raises a fact question as to misnomer.[11] To prove misnomer, a nonmovant must show not only that there was a mistake in the name used in the pleading, but also that the correct parties already were involved in the suit and that application of the doctrine of misnomer will not mislead or disadvantage anyone.[12] Not only did Wendt fail to make these arguments in the trial court, she did not introduce evidence that tended to show that Dr. Sheth already was involved in the suit and that application of the doctrine of misnomer would not mislead or disadvantage him. Although Wendt suggests that we must assume that Dr. Sheth had actual notice of the attempts to bring the suit against him, there was no evidence presented in the trial court that he had actual notice of

---

[11]     *See KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

[12]     *See Greater Hous. Orthopaedic Specialists*, 295 S.W.3d at 325; *Reddy P'ship/5900 N. Freeway LP v. Harris Cty. Appraisal Dist.*, 370 S.W.3d 373, 376 (Tex. 2012).

the suit. Wendt attempts to suggest that Dr. Sheth conceded notice of suit for purposes of the summary-judgment motion, but that is a misreading of the motion, which referenced the notice issue solely for the purpose of establishing an outer limit for the expiration of the limitations period, which was enlarged by 75 days based on notice delivered to the hospital, and which did not depend on notice being actually received by him.[13]

The summary-judgment evidence submitted by Wendt in response to the motion for summary judgment conclusively showed that Dr. Sheth was not named in the original petition and that the original petition was not sent to his place of business. Courts are flexible in cases of true misnomer, "because the party intended to be sued has been served and put on notice that it is the intended defendant."[14] Those circumstances do not apply in this case, in which Dr. Sheth was not actually served with the lawsuit and was not otherwise shown to have been made part of the case during the limitations period. We conclude that Wendt failed

---

[13]    *See* TEX. CIV. PRAC. & REM. CODE § 74.051(c) ("Notice given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and *this tolling shall apply to all parties and potential parties*." (emphasis supplied)).

[14]    *See Greater Hous. Orthopaedic Specialists*, 295 S.W.3d at 326; *Pierson v. SMS Fin. II, L.L.C.*, 959 S.W.2d 343, 347 (Tex. App.—Texarkana 1998, no pet.).

to carry her burden in the trial court to prove misnomer and thereby avoid the operation of the statute of limitations.

## III

At oral argument, Wendt's counsel suggested that affirming the summary judgment granted in this case could create perverse incentives for doctors to "obviate the rights of a lot of patients" by using incorrect names in medical records or otherwise obscuring their involvement until after the expiration of limitations. We disagree with this characterization of the issues presented by the appeal.

Although this lawsuit was filed within the limitations period, the mere fact of filing suit was not sufficient to preserve all claims against all possible parties. The limitations period applicable to a medical malpractice claim exists to "afford plaintiffs what the legislature deems a reasonable time to present their claims and protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise."[15] A necessary consequence of the imposition of a limitations period is that plaintiffs must use the time available to them to conduct whatever investigation is necessary to evaluate potential claims, identify potential defendants, file the lawsuit in a timely fashion, and exercise reasonable diligence

---

[15]     *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990).

to serve the defendants. To the extent formal discovery may be necessary to identify parties who must be named within the limitations period and served within a reasonable time thereafter, that formal discovery must be initiated before limitations expires, and it must be pursued with the diligence and urgency appropriate to the task of identifying responsible parties so that they can be timely joined in the litigation.

The face of the original petition filed in this case demonstrates that at the time it was filed, the investigation necessary to identify Dr. Sheth and name him as a defendant was incomplete. The petition alleged "on information and belief" that "Dr. Smith" was a resident of Texas. The petition stated that after a "diligent search," the Wendts were unable to identify a "Dr. Smith" who worked as an anesthesiologist at the hospital where he was treated. But no reason has been suggested why informal investigative methods and formal discovery procedures were inadequate to facilitate the identification of Dr. Sheth during the 2-year limitations period applicable to this claim. Moreover, although most discovery in a health care liability claim is stayed pending the service of expert reports, there is an exception for "acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's

11

health care" through written discovery, depositions on written questions, and discovery from nonparties.[16]

Thus the lesson to be drawn from this appeal is not that a doctor's illegible handwriting thwarted the pursuit of a claim against him, or that unscrupulous doctors could replicate such circumstances to avoid liability in future cases. It is instead that when the identity of a potential defendant is in question, the mere filing of a lawsuit before the expiration of the limitations period may not be sufficient to ensure that all necessary parties are joined in the litigation. Instead, to the extent possible, the investigation of potential parties needs to be *completed* by the expiration of limitations, so that all defendants may be timely named and made part of the lawsuit.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Higley, Massengale, and Lloyd.

---

[16]    TEX. CIV. PRAC. & REM. CODE § 74.351(s); *see also id*. § 74.051(a).